MATHIAS OSWALT V. J. R. HALLOWELL, *as Treasurer, &c.*

AGRICULTURAL COLLEGE LANDS, *Held under Contracts of Purchase, are Taxable.* In 1867, the plaintiff purchased from the state, through its proper agents, a quarter-section of the ninety thousand acres of Agricultural College lands. The purchase-money was to be paid "in eight equal annual installments, with ten per centum interest, on each installment, payable annually, the first installment to be paid at the date of purchase," and the last installment to be paid December 6, 1874. Plaintiff paid the first installment at the date of the purchase, and probably paid the other installments as they became due, though this is not shown. When plaintiff purchased said land, he received only a bond for a deed, and gave his promissory notes for the balance of the purchase-money. Plaintiff has never received a patent from the state for said land. In 1873 said land was assessed for taxation, and taxes were levied upon the same. *Held,* that as ₴1 of the tax law provides that "all property in this state, real and personal, not *expressly exempted* therefrom, shall be subject to taxation," and as no provision of the constitution or statutes "expressly," or even impliedly, exempts such property from taxation, the same is taxable.

*Error from Washington District Court.*

UPON his duly verified petition, *Oswalt,* in April 1874, applied to the judge of the district court for a temporary injunction. The district judge refused to grant the injunction, and from this decision and refusal *Oswalt* appeals, and brings the case here on error.

*J. D. Brumbaugh,* for plaintiff.

The opinion of the court was delivered by

VALENTINE, J.: This was an application to the judge of the court below, at chambers, for a temporary injunction to restrain the defendant, as treasurer of Washington county, from selling the S.W.¼ of section 20, township 2, range 5, in said county, for taxes assessed upon said land for the year 1873. The plaintiff purchased said land of the state of Kansas, the same being a portion of the ninety thousand acres of land granted by the government of the United States to

the state of Kansas under the act of congress entitled, "An act donating public lands to the several states and territories which may provide colleges for the benefit of agriculture and the mechanic arts," approved July 2d, 1862; (12 U. S. Stat. at Large, 505.) He purchased said land under the provisions of an act of the legislature of Kansas entitled, "An act for the sale of lands belonging to the state agricultural college," approved February 22d, 1866; (Gen. Stat. 78.) Said land was sold December 6th, 1867, and the purchase-money was to be paid "in eight equal annual installments, with ten per centum interest on each installment, payable annually, the first installment to be paid at the date of purchase," (Gen. Stat. 78, § 2,) and the last installment to be paid December 6th, 1874. Plaintiff paid the first installment at the date of the purchase; but whether he has paid any of the other installments, is not shown. When plaintiff purchased said land he received only a bond for a deed, and gave his promissory notes for the balance of the purchase-money. At the time said land was assessed and taxed in 1873, all of said notes except two were due. Whether any of them, or some of them, or all of them, had been paid at that time, is not shown. We shall assume however that all of those which had become due up to that time were paid, and those which had not yet become due were not paid. No patent had yet been issued by the state to the plaintiff for said land. The main question therefore presented by these facts, and indeed we think the only one, is, whether said land was taxable for the year 1873. We suppose it will be conceded that the legal title to said land still remained in the state of Kansas when said land was taxed, and that the equitable title thereto had been transferred to the plaintiff. The purchaser of such lands is not required, under the statutes, to do anything more than to pay his eight annual installments of the purchase-money, with interest; and there is no provision made by statute or otherwise for any forfeiture of the land back to the state on failure by him to make such payments. Hence, the whole question of the forfeiture of the land in such cases would

rest upon broad equitable principles; and as equity abhors forfeitures, but few forfeitures would be declared. Therefore, under such circumstances we think the plaintiff holds the equitable title to said land; and if so, then we think the land is taxable. Even where the United States holds the legal title, and an individual holds the equitable, the land is taxable. (*McMahon v. Welsh,* 11 Kas. 291, and cases there cited.)

But do the laws of Kansas make this kind of land held in this manner taxable? Now there can be no question as to the power of the state to tax all land within within its borders not belonging to the United States, or to Indians, even though the state may own the land itself. The only question is, whether the state has attempted to make these lands taxable. The first section of the tax law provides, that, "all property in this state, real and personal, not *expressly exempted* therefrom, shall be subject to taxation." (Gen. Stat. 1019, § 1.) Now are these laws "expressly exempted" from taxation? We think not. The constitution provides that "all property used *exclusively* for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and personal property to the amount of at least two hundred dollars for each family, shall be exempted from taxation." (Const., art. 11, § 1.) This is the only constitutional exemption of any kind of property from taxation. Section 3 of the tax law among other things provides, that "The property described in this section, to the extent herein limited, shall be exempt from taxation. * * * *Fifth,* All property belonging *exclusively* to this state, or to the United States." This is the only provision of the statutes that may be supposed to have any application to this question. No one will suppose that the lands are exempt from taxation after being sold, merely because the proceeds of the sales are to be used for educational purposes only; (*Washburn College v. Shawnee Co.*, 8 Kas. 344; *Vail v. Beach,* 10 Kas. 214; *St. Mary's College v. Crowl,* 10 Kas. 442, 450;) hence we have not quoted the statutory provisions exempting property used "exclusively" for educational purposes. Now, the land in question

is not "used *exclusively* for state purposes," as required by the constitution in order to make it exempt from taxation; and it does not belong to the state *exclusively*, as required by the statute, in order to exempt it from taxation. Indeed, the land is not used for state purposes at all, and the state only holds the legal title, with a lien upon the equitable title, to secure the payment of the unpaid purchase-money. The purchaser has the entire *use* of the land, and has the entire equitable title, subject only to a lien upon the same for the unpaid purchase-money. (With reference to this kind of lien, see *Stevens v. Chadwick*, 10 Kas. 406; *Curtis v. Buckley*, 14 Kas. 449.) Under § 1 of the tax law, land must be "expressly exempted," in order to be exempt from taxation. But in this case the land is not exempted even by implication. It will be the duty of the board of regents, and of the legislature which meets annually, as well as the purchaser of the land, to see that no tax title is obtained against the land.

The order of the judge of the court below, refusing the temporary injunction, is affirmed.

All the Justices concurring.